

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | | |
|---|---|---|
| BEVERLY FOWLER CARREE, | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 1:23-03233-MGL |
| | § | |
| MARTIN O'MALLEY, *Commissioner of* | § | |
| *Social Security*, | § | |
| Defendant. | § | |

## ORDER ADOPTING THE REPORT AND RECOMMENDATION
## AND AFFIRMING DEFENDANT'S FINAL DECISION DENYING BENEFITS

This is a Social Security appeal in which Plaintiff Beverly Fowler Carree (Carree) seeks judicial review of the final decision of Martin O'Malley (O'Malley) denying her claims for Disability Insurance Benefits (DIB) and Disabled Widow Benefits (DWB). The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting O'Malley's final decision be affirmed.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on February 29, 2024, Carree filed her objections on March 14, 2024, and O'Malley filed his reply on March 25, 2024. The Court has carefully reviewed Carree's objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Carree filed applications for DIB and DWB on June 5, 2018. She alleged her disability commenced on May 27, 2017.

Her applications were denied initially and upon reconsideration. On January 23, 2020, Carree participated in a hearing before Administrative Law Judge (ALJ). The ALJ issued an unfavorable decision on February 24, 2020, finding Carree was not disabled within the meaning of the Act.

The Appeals Council subsequently denied Carree's request for review. She then filed a complaint in this Court on December 29, 2020.

On December 2, 2021, then-United States District Judge J. Michelle Childs issued an order accepting the Magistrate Judge's Report, reversing the decision, and remanding the case for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g). The Appeals Council thereafter remanded the case to the ALJ.

Carree participated in a second hearing on October 20, 2022; and the ALJ issued a second unfavorable decision on December 8, 2022. The Appeals Council subsequently allowed the ALJ's decision to serve as the final decision for the purpose of judicial review. Carree filed a complaint in this Court on July 7, 2023.

The Agency has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from

returning to her/his past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

Under 28 U.S.C. § 636(b)(1), a district court is required to conduct a de novo review of those portions of the Magistrate Judge's Report to which a specific objection has been made.  The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

It is the claimant's duty both to produce evidence and prove she is disabled under the Act. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  Nevertheless, the ALJ is to develop the record and when he"fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

It is also the task of the ALJ, not this Court, to make findings of fact and resolve conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "It is not within the province of this [C]ourt to determine the weight of the evidence; nor is it [the Court's] function to substitute [its] judgment for that of [the defendant] if [the] decision is supported by substantial evidence."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

"And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted) (internal quotation marks omitted).

Consequently, the Court "must sustain the ALJ's decision, even if [it] disagree[s] with it, provided the determination is supported by substantial evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Under the substantial evidence standard, the Court must view the entire record as a whole. *Steurer v. Bowen*, 815 F.2d , 1249, 1250 (8th Cir. 1987).

Although ALJs must sufficiently explain the reasons for their rulings to allow this Court to provide meaningful review, *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013), "the ALJ is not required to address every piece of evidence[;] [instead,] he must . . . build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citations omitted). The Court's "general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005).

"[T]he substantial evidence standard presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (citations omitted) (internal quotation marks omitted) (alteration omitted). Put differently, if the ALJ's "dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported." *Kellough v. Heckler*, 785 F.2d 1147, 1149 (4th Cir. 1986).

With this legal framework in mind, the Court will consider Carree's two objections to the Magistrate Judge's Report. First, Carree "objects to the Magistrate Judge's implicit endorsement

of the ALJ's [altering] terms into medical findings to avoid a finding of disability."  Objections at 2 (emphasis omitted).

Put differently, Carree argues the Magistrate Judge erred by agreeing with the ALJ that certain  work restrictions, which were placed by two of the doctors who saw Carree, were meant to be temporary.

When considering such evidence, the ALJ is to consider and articulate in the decision how persuasive the medicals opinions are based upon the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant(length, frequency, purpose, extent, and examining), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 404.1520c(b), (c).

Supportability and consistency are the most important factors for consideration; and the ALJ is required to explain how s/he considered the supportability and consistency factors in evaluating the opinion evidence.  20 C.F.R. § 404.1520c(a), (b)(2).

When evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. §  404.1520c(c)(1).  And, in evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2).

The regulations fail to require the ALJ to provide an explanation as to how the remaining factors were considered.  20 C.F.R. §   404.1520c(b)(2).

Dr. Deepak Malhan, M.D. (Dr. Malhan) found Carree "may return to work, no lifting over

5 pounds, no pushing-pulling over 5 pounds, and desk job only" A.R. 929.  Carree saw Dr. Malian

in a workers' compensation context.

Here, in the ALJ's explanation of his decision to interpret Dr. Malhan's work restrictions as

being temporary, he stated as follows:

> I have found the opinion of [Dr. Malhan], dated May 11, 2017[,] that
> [Carree] 'may return to work, no lifting over 5-pounds, no
> pushing/pulling over 5-pounds and desk job only' unpersuasive as
> this appears to be a temporary restriction not permanent.  Dr. Malhan
> examined [Carree] on May 11, 2017, in part, for the purposes of
> [Carree's] Workmen's Compensation statement of physical capacity.
> In his history he noted that [Carree] had very little strength in the
> right shoulder and restricted to lifting by only 5 pounds by Dr.
> [Hoenig].  All other treatment records are for dates prior to the onset
> date.   For example, when examined on December 21, 2015,
> examination revealed the right shoulder had no misalignment,
> atrophy, erythema, induration, swelling, warmth, scapular winging or
> prominence.  Soft tissue palpation on the right revealed tenderness.
> His diagnosis was bilateral shoulder pain and left hip pain.
> Examinations provided by other physicians in Dr. Malhan's office
> revealed [Carree] was healthy appearing, in no acute distress, joints
> bones and muscles were examined revealing no contractures
> misalignment, tenderness, bony abnormalities and normal movement
> of all extremities.  There was RSI joint and sciatic notch tenderness
> and no neurologic deficits.

A.R. at 1106 (citations omitted).

 As to the supportability of Dr. Malhan's above-listed restrictions to be temporary, the ALJ

observed, except for the May 11, 2017 visit, Dr. Malhan's treatment prior to Carree's alleged

disability onset date revealed only minimum abnormal findings.  And, considering the consistency

factor, the ALJ noted the other providers in Dr. Malhan's office had generally recorded  normal

observations.

Accordingly, the ALJ concluded Dr. Malhan's opinion was unpersuasive inasmuch as it

appeared to indicate a temporary restriction, which was based solely on his findings during the May

6

11, 2017 visit.  Dr. Malhan's opinion was unsupported by his longitudinal treatment record, and it was inconsistent with the records of the other medical providers in his office.

Having made an exhaustive and searching examination of the entire record in this case, the Court is unable to say the Magistrate Judge erred in agreeing with the ALJ's conclusion Dr. Malhan's work restrictions on Carree were to be temporary.

Dr. Michael Hoenig, M.D. (Dr. Hoenig) also suggested several work restrictions for Carree. The ALJ explained his decision to treat the restrictions discussed herein as temporary as follows:

> [although] I have found the various work status forms completed by Dr. Hoenig in the course of treating [Carree's] left rotator cuff and subsequent left shoulder surgery, noting various degrees of limitation during her recovery from surgery unpersuasive (5/21/18—no use of left arm; 7/10/18—out of work; 9/25/2019—continue on light duty, no lifting more than 1#; 11/12/2018—continue on light duty, waist to shoulder 5# and shoulder to overhead 0#; no lifting greater than 5 pounds . . . [)] as these appear to be temporary restrictions and are inconsistent with exam findings that reflect she progressed to near full range of motion of both shoulders, strength is good, no crepitus, no pain with impingement maneuvers and no tenderness to palpation by December 2018.  These restrictions are also inconsistent with [Carree's] ability to work as a nanny for almost two years, working 8-hours a day, three or four days a week (three days a week as reported in [Carree's] testimony and four days a week as noted in exam notes.
>
> Further, I find Dr. Hoenig's permanent restrictions of no restrictions other than 'no overhead lifting' somewhat persuasive and considered his opinion in restricting claimant to only occasional overhead reaching.

A.R. at 1106–07 (citations omitted).

Concerning the supportability factor, the ALJ, after summing up Dr. Hoenig's observations over the course of his treatment of Carree, expressed Dr. Hoenig's restriction forbidding overhead reaching was inconsistent, and thus unsupported, by his observation in his notes from Carree's December 11, 2018, visit stating "Examination of both shoulders shows near full range of motion.

7

Strength is good. No crepitus. No pain with impingement maneuvers. No tenderness to palpation."
A.R. at 973.

In considering the consistency factor, the ALJ concluded the restriction was inconsistent with Carree's daily living activities, work activity, and the findings in recent examinations.

As the Court already stated, it has made an exhaustive review of the record.  Having done so, it is left with the firm opinion the Magistrate Judge was correct in concluding the ALJ followed the law and there was substantial evidence to support his conclusion regarding the temporary nature of Dr. Hoenig's above-listed work restrictions.

For all these reasons, the Court will overrule this objection.

In Carree's second objection, she "objects to the Magistrate Judge's findings related to childcare."  Objections at 4 (emphasis omitted).

In discussing Carree's daily activities, he stated her

> allegations [concerning disability] are undermined by the somewhat normal level of daily activity and interaction demonstrate by the record.  In particular, [Carree] admitted activities of daily living including performing personal care items unassisted (albeit with some reaching related difficulties), performing light household tasks, shopping for household essentials, managing funds, caring for her granddaughter, working 8-hours a day, several days a week as a nanny for an infant child and pursuing hobbies such as watching TV, going to the gym, riding an exercise bike, walking daily for exercise, and socializing with a male friend on the weekends . Some of the physical and mental abilities required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. I find [Carree's] ability to participate in a wide-range of activities is inconsistent with [Carree's] allegations of debilitating functional limitations.

A.R. at 1103-04 (citations omitted).

Carree makes much of the fact the ALJ listed her "caring for her granddaughter," *id.*, and her "working 8-hours a day, several days a week as a nanny for an infant child[,]" *id.*, as two different daily activities. According to her, they both refer to the same child, and, thus, the same activity.

So, the ALJ erred in finding Carree's "caring for her granddaughter," *id.*, and her "working . . . as a nanny for an infant child[,]" *id.*, were two different children and two separate daily activities. But, the error was harmless.

This is so because "the relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

It is implausible to suggest this error made the difference between whether the ALJ thought Carree is disabled. With or without this error, there is substantial evidence supporting O'Malley's decision to deny Carree's applications for benefits.

Consequently, "the ALJ's decision remains legally valid, despite such error." *Id*. As such, the Court will also overrule this objection.

In sum, the Court has little trouble concluding there is substantial evidence to support the ALJ's conclusion Carree failed to establish she was disabled under the Act during the relevant time period; the ALJ's decision is detailed enough to permit this Court's review; the ALJ's decision is free from any reversible legal error; and the ALJ's determination is reasonable.

Thus, after a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Carree's objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of the Court O'Malley's final decision denying her claims for DIB and DWB is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed this 9th day of May, 2024, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE